IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **TIG Insurance Company** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Case No. 08 CV 1846 |
| v. ) | Judge Wayne R. Andersen |
| ) | Magistrate Judge Maria Valdez |
| **Swiss Reinsurance America** ) | |
| **Corporation** ) | |
| ) | |
| **Defendant.** ) | |

## ANSWER AND AFFIRMATIVE DEFENSES OF SWISS REINSURANCE AMERICA CORPORATION

NOW COMES, Defendant SWISS REINSURANCE AMERICA CORPORATION, ("Swiss Re"), by and through its counsel, BATES & CAREY LLP, and for its Answer and Affirmative Defenses to Plaintiff TIG Insurance Company's ("TIG") Complaint for Declaratory Judgment and Money Damages, states as follows:

1.      This case concerns defendant Swiss Re's failure to honor numerous reinsurance agreements that its predecessors issued to TIG (the "Reinsurance Agreements"). Those Reinsurance Agreements contain contractual provisions requiring Swiss Re to indemnify TIG for a portion of the "expenses" that TIG incurs in connection with claims under policies issued by TIG. Swiss Re has violated those coverage obligations. TIG has incurred millions of dollars in litigation expenses in connection with efforts by TIG's policyholders to improperly obtain insurance coverage from TIG when no coverage was due under the applicable policies. Although Swiss Re is properly responsible to cover over $329,000.00 of those past "expenses," as well as such expenses incurred in the future, Swiss Re refuses to reimburse TIG for any such expenses. Accordingly, TIG brings this action to obtain a declaration regarding Swiss Re's coverage obligations and to recover the sums owed to TIG pursuant to the Reinsurance Agreements.

**ANSWER:**   Swiss Re admits only that its predecessors issued certain contracts of reinsurance to TIG. In further answering, Swiss Re states that the reinsurance contracts speak for themselves, and Swiss Re denies any allegations or characterizations contained in paragraph

1 inconsistent therewith. Swiss Re denies the remaining allegations contained in paragraph 1 of Plaintiff's Complaint.

## THE PARTIES

2.  Plaintiff TIG is a California corporation with its principal place of business in New Hampshire. TIG is the legal successor-in-interest of certain of the liabilities of several other insurance companies, including International Insurance Company ("IIC), and International Surplus Lines Insurance Company ("ISLIC") (collectively referred to as "TIG"). IIC and ISLIC were the original parties that entered into the Reinsurance Agreements.

**ANSWER:** Swiss Re admits only that it entered into certain contracts of reinsurance with IIC and ISLIC. Swiss Re is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 2 of Plaintiff's Complaint.

3.  Defendant Swiss Re is a reinsurance company domiciled in New York and with its principal place of business in New York City. Swiss Re is one of the world's largest reinsurers and offers a wide variety of reinsurance products and financial services. Swiss Re is the legal successor-in-interest to the rights and obligations under the Reinsurance Agreements, which were originally issued by Kemper Re.

**ANSWER:** Swiss Re admits that it is a New York corporation with its principal place of business located in Armonk, New York, that it is one of the world's largest reinsurers, and that it offers a variety of reinsurance products and financial services. Swiss Re states that the remaining allegations contained in paragraph 3 call for a legal conclusion for which no response is required. To the extent that a response is required, Swiss Re denies the remaining allegations contained in paragraph 3 of Plaintiff's Complaint.

## JURISDICTION AND VENUE

4.  The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. TIG is a citizen of California and New Hampshire while Swiss Re is a citizen of New York. Additionally, this matter by far exceeds the $75,000.00 threshold established by § 1332.

**ANSWER:** Swiss Re admits that it is a New York corporation. Swiss Re states that the remaining allegations contained in paragraph 4 call for a legal conclusion for which no

response is required. To the extent that a response is required, Swiss Re states that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 4 of Plaintiff's Complaint.

5. Venue is proper in this court pursuant to 28 U.S.C. § 1391 in that several transactions or critical portions of the transactions from which this cause of action arise occurred in Cook County, Illinois.

**ANSWER:** Swiss Re states that the allegations contained in paragraph 5 call for a legal conclusion for which no response is required. To the extent that a response is required, Swiss Re states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5 of Plaintiff's Complaint.

6. Among other reasons, IIC and ISLIC were domiciled in Illinois throughout much of the period relevant to this Complaint. Notably, at the time when the contracts were executed, and in fact for a significant period of time thereafter, ISLIC's headquarters and underwriting operations were based in Chicago, Illinois. The Reinsurance Agreements were negotiated through ISLIC's office located in Chicago, Illinois.

**ANSWER:** Swiss Re is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 of Plaintiff's Complaint.

7. Kemper Re was a reinsurance provider domiciled in Illinois with its principal place of business in Long Grove, Illinois. All of the Reinsurance Agreements were negotiated and executed through Kemper Re's business offices located in Long Grove, Illinois. The majority of the Reinsurance Agreements and any subsequent Amendments were negotiated through reinsurance intermediaries located in Chicago, Illinois. Several Reinsurance Agreements and their Amendments were executed through Guy Carpenter & Company, Inc.'s ("Guy Carpenter") offices located in Chicago, Illinois. Guy Carpenter is a global reinsurance intermediary and currently operates under the name Guy Carpenter & Company, LLC. Likewise, several Reinsurance Agreements were negotiated through L.W. Biegler's Chicago offices. In 1998 GE Global Insurance Holding Company ("GE") acquired Kemper Re. GE was later renamed GE Reinsurance Corporation ("GE Re") and was also domiciled in Illinois. Most of the underlying declaratory judgment actions arose when Kemper Re or GE Re were Illinois corporations. Swiss Re acquired GE Re in 2006 and is licensed to transact business in Illinois. On information and belief, Swiss Re transacts business within Illinois and has provided coverage for Illinois companies and interests.

**ANSWER:** Swiss Re admits that Kemper Reinsurance Company ("Kemper Re") was a reinsurance provider domiciled in Illinois with its principal place of business in Long Grove,

3

Illinois. In 1998, GE Global Insurance Holding Corporation ("GE") acquired Kemper Re. Kemper Re was later renamed GE Reinsurance Corporation ("GE Re"). Swiss Reinsurance Company became the ultimate owner of GE Re in 2006. Effective January 1, 2007, GE Re was merged with and into Swiss Re. Swiss Re is licensed to transact business in Illinois and has provided coverage for Illinois companies and interests. Swiss Re is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 7 of Plaintiff's Complaint.

## FACTUAL ALLEGATIONS

8. This Complaint concerns insurance and reinsurance obligations entered into throughout the 1970s and 1980s. Throughout that period, TIG (through its predecessors) was engaged in the business of providing various commercial property and casualty insurance coverage to corporations and commercial entities. TIG typically provided excess coverage, i.e., excess of underlying insurance or a self-insured retention of the policyholder.

**ANSWER:** Swiss Re admits that Plaintiff's Complaint concerns certain insurance and reinsurance contracts incepting in the 1970s and 1980s. Swiss Re is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 8 of Plaintiff's Complaint.

9. As is typical in the insurance industry, for various reasons, TIG decided to purchase reinsurance protection to cover a portion of the insurance liabilities that TIG had assumed under the policies it had issued.

**ANSWER:** Swiss Re is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of Plaintiff's Complaint.

10. Reinsurance is an insurance contract issued to an insurer. The insurer purchasing the reinsurance is known as the "ceding insurer" or "cedent." TIG is thus the "ceding company" in this instance. A reinsurance contract provides a right of reimbursement when the cedent incurs losses or expenses by making payments or by participating in proceedings to resolve claims under insurance policies it has issued to others. The typical reinsurance agreement requires the cedent to pay its reinsurer a portion of the premiums collected from the insurance policies covered by the reinsurance agreement; in turn, the reinsurer is obligated to indemnify the ceding company for its agreed share of the claims and expenses incurred by the ceding company in connection with its policies.

**ANSWER:** Swiss Re states that the allegations contained in paragraph 10 call for a legal conclusion for which no response is required. To the extent that a response is required, Swiss Re denies the characterization of the reinsurance relationship set forth in paragraph 10 of Plaintiff's Complaint.

11. From 1977 through 1985, TIG purchased reinsurance protection from Swiss Re on numerous occasions. A list of the relevant Reinsurance Agreements, including dates of coverage, limits of liability, and the identity of the underlying policyholders, is set forth as Exhibit A, which is incorporated herein by reference. In addition, a copy of each such Reinsurance Agreement in TIG's possession is incorporated and attached hereto as Exhibits B through LL.

**ANSWER:** Swiss Re admits only that TIG purchased certain contracts of reinsurance from Swiss Re from 1977 to 1985, portions of which are identified in Exhibit A and attached as Exhibits B through LL of Plaintiff's Complaint. In further answering, Swiss Re states that the reinsurance contracts speak for themselves, and Swiss Re denies any allegations or characterizations contained in paragraph 11 of Plaintiff's Complaint inconsistent therewith.

12. Although many of the Reinsurance Agreements contain slightly different terms and conditions, at their core, all of them provide that Swiss Re was entitled to receive a share of the premiums that TIG received from its policyholders under reinsured policies. In turn, the Reinsurance Agreements all obligate Swiss Re to indemnify TIG for its specified share of claims and expenses incurred by TIG pursuant to the reinsured policies.

**ANSWER:** Swiss Re states that the reinsurance contracts speak for themselves, and Swiss Re denies any allegations or characterizations contained in paragraph 12 of Plaintiff's Complaint inconsistent therewith.

13. There is no dispute in this case regarding premium. In fulfillment of its contractual obligations, TIG has paid to Swiss Re all of the premiums properly due and owing to Swiss Re under the Reinsurance Agreements. Swiss Re has accepted and retained those premiums for its benefit.

**ANSWER:** Swiss Re admits the allegations contained in paragraph 13 of Plaintiff's Complaint.

14. In contrast, Swiss Re has failed to honor its contractual obligation to reimburse TIG for "expenses" it has incurred in connection with the reinsured policies issued by TIG.

**ANSWER:** Swiss Re denies the allegations contained in paragraph 14 of Plaintiff's Complaint.

15. Each of the Reinsurance Agreements contains substantially the following language regarding Swiss Re's obligation to cover a portion of TIG's expenses:

> "All claims involving this reinsurance, when settled by the Company, shall be binding on the Reinsurer, which shall be bound to pay its proportion of such settlements promptly following receipt of proof of loss. *In addition the Reinsurer shall be bound to pay its proportion of expenses, other than Company salaries and office expenses, incurred by the Company in the investigation and settlement of claims or suits. . . "*

Kemper Re Facultative Reinsurance Certificate, Certificate No. 44282-7-00-80; Section E (emphasis added).

**ANSWER:** Swiss Re states that the reinsurance contracts speak for themselves, and Swiss Re denies any allegations or characterizations contained in paragraph 15 of Plaintiff's Complaint inconsistent therewith.

16. Over the years, TIG's policyholders have asserted various claims for coverage under the reinsured policies. Pursuant to its duties to its policyholders, after receiving notice of claims, TIG has performed an investigation of each claim to determine whether and in what amount it should be paid. Where TIG has determined that claims are covered, they have been paid, and the losses and expenses incurred by TIG have been ceded to Swiss Re.

**ANSWER:** Swiss Re admits only that TIG has ceded certain amounts to Swiss Re under certain reinsurance contracts entered between the parties. Swiss Re is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 16 of Plaintiff's Complaint.

17. On certain occasions, however, TIG's policyholders have refused to accept decisions by TIG that their claims (or portions thereof) were outside the scope or limits of coverage afforded by TIG's policies. Accordingly, TIG's policyholders initiated declaratory judgment actions, seeking a declaration that TIG was obligated to provide the requested coverage. Accordingly, TIG was forced to incur expenses investigating, defending, and

responding to those coverage claims. On other occasions, TIG sought to obtain an affirmative declaration that losses at issue were not covered.

**ANSWER:** Swiss Re is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 of Plaintiff's Complaint.

18. TIG's actions in investigating, defending, and prosecuting these coverage determinations inured to the mutual benefit of TIG and Swiss Re. To the extent that TIG was successful in establishing that its policyholders' claims were improper, inflated, or outside the scope or limits of coverage, such a result reduced the amount of loss that Swiss Re was obligated to pay. TIG's actions also were necessary and proper to ensure that only covered losses were paid under its policies, a course of action that benefited Swiss Re as TIG's reinsurer.

**ANSWER:** Swiss Re is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of Plaintiff's Complaint.

19. The expenses TIG incurred in connection with its policyholder's claims for coverage are expenses covered by the plain language of the Reinsurance Agreements. Accordingly, Swiss Re is obligated to indemnify TIG for its specified percentage of those expenses.

**ANSWER:** Swiss Re states that the allegations contained in paragraph 19 call for a legal conclusion for which no response is required. To the extent that a response is required, Swiss Re denies the allegations contained in paragraph 19 of Plaintiff's Complaint.

20. After incurring expenses in connection with its policyholder's assertions of coverage, TIG has submitted requests to Swiss Re for reimbursement. Pursuant to the terms of the Reinsurance Agreement, TIG consistently invoiced Swiss Re for its proportionate share of those expenses as they were incurred, the remainder of which were borne by TIG. Swiss Re has refused to pay any such expenses.

**ANSWER:** Swiss Re admits only that TIG has billed certain amounts to Swiss Re under certain reinsurance contracts entered between the parties. Swiss Re denies the remaining allegations contained in paragraph 20 of Plaintiff's Complaint.

21. TIG has incurred declaratory judgment coverage action expenses in connection with (among others) five (5) major policyholders. TIG has submitted requests to Swiss Re for reimbursement totaling $329,728.34 in connection with TIG's expenses incurred in coverage actions with those five major policyholders. A breakdown of the specific amounts billed by TIG to Swiss Re on each of those policyholder accounts is as follows:

7

| | | |
|---|---|---|
| Atchinson-Topeka-Santa Fe | $ | 69,274.83 |
| Norfolk Southern Corp. | $ | 59,853.27 |
| Phillip Morris | $ | 43,255.76 |
| Rockwell International | $ | 81,984.37 |
| United Technologies Corp. | $ | 75,360.11 |
| TOTAL | $ | 329,728.34 |

**ANSWER:** Swiss Re admits that TIG has submitted the foregoing billing to Swiss Re for payment. Swiss Re denies that TIG is entitled to any such payment for these billings.

22. TIG has made repeated efforts to obtain Swiss Re's compliance with its contractual obligations. After years of discussions and negotiations regarding the issue, on December 27, 2007, TIG sent a final demand for payment. In that letter, TIG notified Swiss Re that it would initiate legal proceedings against Swiss Re if Swiss Re did not accept its obligations and indemnify TIG by January 24, 2008. Indeed, Swiss Re did not even respond to that letter. Despite that demand, Swiss Re has not paid declaratory judgment expenses as required by its contractual obligations.

**ANSWER:** Swiss Re admits that it received a letter from TIG dated December 27, 2007. Swiss Re states that the letter speaks for itself, and Swiss Re denies any allegations or characterizations contained in paragraph 22 of Plaintiff's Complaint inconsistent therewith. In further answering, Swiss Re admits that it did not respond to TIG's letter and that it has not paid TIG's declaratory judgment expenses, but Swiss Re denies that it is obligated or required to pay such expenses under the reinsurance contracts entered with TIG.

## COUNT I

## DECLARATORY JUDGMENT

23. TIG hereby re-alleges Paragraphs 1 through 22 as though fully set forth herein.

**ANSWER:** Swiss Re reasserts and incorporates by reference its answers to the allegations contained in Paragraphs 1 through 22 of Plaintiff's Complaint as and for its answer to paragraph 23.

24. TIG has fully performed its obligations under the Reinsurance Agreements.


**ANSWER:** Swiss Re is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of Plaintiff's Complaint.

25.    Despite repeated demands, Swiss Re has failed to honor its obligation to reimburse TIG for its expenses incurred in coverage actions with TIG's policyholders. Further, Swiss Re refuses to cover such expenses incurred by TIG in the future.

**ANSWER:** Swiss Re admits that TIG has demanded reimbursement for its expenses and that Swiss Re has denied TIG's demands. In further answering, Swiss Re denies that TIG is entitled to its demanded expenses under the reinsurance contracts entered between Swiss Re and TIG.

26.    Each Reinsurance Agreement constitutes a separate "contract or other written instrument" that is the subject of an actual controversy between TIG and Swiss Re. Pursuant to Fed. R. Civ. Proc. 57 and 28 U.S.C. § 2201, TIG is entitled to a declaration establishing its rights and Swiss Re's obligations under the Reinsurance Agreements.

**ANSWER:** Swiss Re states that the reinsurance contracts speak for themselves, and Swiss Re denies any allegations or characterizations contained in paragraph 26 of Plaintiff's Complaint inconsistent therewith. In further answering, Swiss Re states that the remaining allegations contained in paragraph 26 call for a legal conclusion for which no response is required. To the extent that a response is required, Swiss Re is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 26 of Plaintiff's Complaint.

WHEREFORE, defendant SWISS REINSURANCE AMERICA CORPORATION respectfully requests that judgment be entered in this action:

a.    Ordering that Plaintiff take nothing by way of its Complaint for Declaratory Judgment and Money Damages against Swiss Re or any of the claims for relief alleged therein;

b.  Dismissing with prejudice Plaintiff's Complaint for Declaratory Judgment and Money Damages;

c.  Awarding Swiss Re its costs and attorneys' fees incurred in this action to the full extent allowed by law; and

d.  Awarding Swiss Re such other and further relief that this Court may deem just and proper.

## COUNT II

## BREACH OF CONTRACT

27.  Plaintiff TIG hereby re-alleges paragraphs 1 through 26 as though fully set forth herein.

**ANSWER:** Swiss Re reasserts and incorporates by reference its answers to the allegations contained in Paragraphs 1 through 26 of Plaintiff's Complaint as and for its answer to paragraph 27.

28.  TIG has fully performed its obligations under the Reinsurance Agreements.

**ANSWER:** Swiss Re is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28 of Plaintiff's Complaint.

29.  Despite repeated demands, Swiss Re has failed to pay TIG the amounts properly due and owing under the Reinsurance Agreements.

**ANSWER:** Swiss Re admits that TIG has demanded reimbursement for its expenses and that Swiss Re has denied TIG's demands. In further answering, Swiss Re denies that TIG is entitled to its demanded expenses under the reinsurance contracts entered between Swiss Re and TIG.

30.  Swiss Re's failure to pay TIG the amounts owed constitutes a material breach of the Reinsurance Agreements with TIG.

10

**ANSWER:** Swiss Re states that the allegations contained in paragraph 30 call for a legal conclusion for which no response is required. To the extent that a response is required, Swiss Re denies the allegations contained in paragraph 30 of Plaintiff's Complaint.

31. As a result of Swiss Re's material breach of its reinsurance agreements, TIG has suffered financial damages in an amount no less than $329,728.34.

**ANSWER:** Swiss Re denies that it materially breached any reinsurance agreement with TIG. Swiss Re is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 31.

WHEREFORE, defendant SWISS REINSURANCE AMERICA CORPORATION respectfully requests that judgment be entered in this action:

a. Ordering that Plaintiff take nothing by way of its Complaint for Declaratory Judgment and Money Damages against Swiss Re or any of the claims for relief alleged therein;

b. Dismissing with prejudice Plaintiff's Complaint for Declaratory Judgment and Money Damages;

c. Awarding Swiss Re its costs and attorneys' fees incurred in this action to the full extent allowed by law; and

d. Awarding Swiss Re such other and further relief that this Court may deem just and proper.

### AFFIRMATIVE DEFENSES

Swiss Re hereby sets forth its separate and distinct defenses to Plaintiff's Complaint. Swiss Re sets forth the following matters to apprise Plaintiff of certain potentially applicable defenses. By listing any matter as an affirmative defense, Swiss Re does not assume the burden of proving any matter upon which Plaintiff bears the burden of proof under the applicable law.

### First Affirmative Defense
### (Laches)

Plaintiff's claims may be barred, in whole or in part, by the doctrine of laches.

### Second Affirmative Defense
### (Waiver/Release/Estoppel)

Plaintiff's claims may be barred, in whole or in part, by the doctrines of waiver, release, and/or estoppel.

### Third Affirmative Defense
### (Statute of Limitations/Time Bar)

Plaintiff's claims may be barred, in whole or in part, to the extent that Plaintiff may have failed to institute suit within the period of time required by any applicable statute of limitations and/or to the extent that such claims may otherwise be time-barred.

### Fourth Affirmative Defense
### (Terms and Conditions)

Plaintiff's claims may be barred, in whole or in part, by the terms and conditions contained in the various reinsurance contracts.

### Fifth Affirmative Defense
### (Right to Amend)

Swiss Re reserves the right to amend its answer and affirmative defenses, to assert additional affirmative defenses, and to supplement, alter or change its answer upon disclosure of more definite facts by Plaintiff, and upon the undertaking of discovery and an investigation of this matter.

Respectfully submitted,

By: <u>s/ Robert J. Bates, Jr.</u>
    One of the attorneys for Defendant
    Swiss Reinsurance America Corporation

Robert J. Bates, Jr. (Bar No. 3122268)
Bonny S. Garcha (Bar No. 627092)
BATES & CAREY LLP
191 North Wacker
Suite 2400
Chicago, IL 60606
312-762-3170 (Telephone)
312-762-3200 (Facsimile)
*rbates@batescarey.com*
*bgarcha@batescarey.com*
*Attorneys for Defendant*

Dated:   May 28, 2008

256336